STATE OF LOUISIANA

VERSUS

RICHARD STARKS, JR.

NO. 20-KA-429

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE FORTIETH JUDICIAL DISTRICT COURT
PARISH OF ST. JOHN THE BAPTIST, STATE OF LOUISIANA
NO. 16,386, DIVISION "C"
HONORABLE J. STERLING SNOWDY, JUDGE PRESIDING

November 03, 2021

**JOHN J. MOLAISON, JR.**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Marc E. Johnson, and John J. Molaison, Jr.

**REMANDED WITH INSTRUCTIONS**
    **JJM**
    **FHW**
    **MEJ**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
Honorable Bridget A. Dinvaut
Christopher B. Cortez

COUNSEL FOR DEFENDANT/APPELLANT,
RICHARD STARKS, JR.
Samuel H. Winston

**MOLAISON, J.**

The defendant, Richard Starks, Jr., appeals his conviction and sentence alleging a claim of ineffective assistance of counsel. On October 14, 2019, the defendant was sentenced to life in prison without benefit of parole, probation, or suspension of sentence after a jury found him guilty of second degree murder. Because there is insufficient evidence in the record, we remand the matter to the trial court for a contradictory hearing at which the ineffective assistance claim can be fully litigated.

PROCEDURAL HISTORY

The defendant was indicted on October 24, 2016 on one count of second degree murder of Carretta Starks in violation of La. R.S. 14:30.1. At his arraignment on November 3, 2016, he pled not guilty. After two previous attorneys withdrew, his trial defense counsel enrolled in the case on March 10, 2018. The defendant changed his plea to not guilty and not guilty by reason of insanity.

The defense counsel filed a motion for appointment of a sanity commission under La. C.Cr.P. art. 644 on April 3, 2017.[1]   After his evaluation and review of medical records, Rafael Salcedo, Ph. D., Forensic Psychologist, issued reports on May 1, 2017, June 19, 2017, and August 23, 2017, finding that the defendant understood the nature of the charges and the proceedings against him and was capable of assisting his attorney in preparing his defense. He also recommended that the defendant be found to have been legally sane at the time of the offense. Dr. Salcedo testified at a sanity hearing on September 20 2017.[2]  Christy Montegut,

---

[1] When a defendant enters a combined plea of "not guilty and not guilty by reason of insanity," the court may appoint a sanity commission as provided in Article 644 to make an examination as to the defendant's mental condition at the time of the offense. The court may also order the commission to make an examination as to the defendant's present mental capacity to proceed. La. C.Cr.P. art. 650.

[2] The transcripts of these hearings is not contained in the appellate record.

M.D., Coroner of St. John the Baptist Parish, also evaluated the defendant and issued his reports on September 19, 2017 and March 29, 2018. Dr. Montegut found the defendant mentally competent to stand trial and he "more than likely was mentally competent at the time of the alleged offense." On November 20, 2017 and August 22, 2018, Dr. Montegut testified at a sanity hearing.[3] At the conclusion of these hearings, the trial court found the defendant competent to stand trial.

The defendant was re-arraigned, upon the State's request, prior to jury selection on October 1, 2019. After a two-day trial, the defendant was found guilty on October 3, 2019 by a unanimous jury. He was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence on October 14, 2019. He filed a timely motion for appeal.

FACTS

At trial, the State presented evidence that on September 13, 2016, the defendant shot his wife of twenty years, Carretta Starks, in the back of the head in the living room of their LaPlace, Louisiana home. The defendant called 9-1-1 and told the St. John the Baptist Parish dispatcher that he needed an ambulance because he had shot his wife. The jury was played a recording of the call in which the defendant explained "she's having an affair and I asked her to stop that and she just, I don't know." He further stated "[t]he gun went off accidentally. I had the gun in my hand and the gun went off." The dispatcher, Amanda Tamplain, directed the defendant to walk outside with his hands up as a precautionary measure. St. John the Baptist Parish Sheriff's Office Sergeant Sid Triche used a P.A. system to order the defendant to exit the house.

After the defendant was arrested, Sergeant Triche entered the house and observed the victim slumped over with no pulse. Detective Joshua Masters of the

---

[3] Only the transcript from the August 22, 2018 hearing is in the appellate record.

St. John the Baptist Parish Sheriff's Office was the lead investigator. He testified that a spent .45 caliber shell casing was found behind the victim's body, a spent projectile was found near the front area of her body, and a nylon pistol holder was located on the bed in the master bedroom next to a live .45 caliber brass round. A .45 caliber Glock 21 handgun with a detached magazine was found on the floor next to the victim's feet.

The defendant was brought to the criminal investigations division where he was read his rights. Detective Masters testified the defendant, who appeared calm, invoked his right to an attorney and to not speak with detectives. The defendant requested that his children not be allowed to go to the house to see their mother.

A search of the victim's phone indicated that a 9-1-1 call, lasting forty seconds, was placed from the phone at 2:13 a.m. Prior to that call, two other calls were placed: one to the defendant's father and another to Corey Eugene. Detective Masters testified that the defendant's father stated that he did not speak to his son, and the call went to voicemail. Mr. Eugene, a longtime friend of the victim and the defendant, told Detective Masters that the defendant told him the victim was "gone" and that the gun had gone off.

The house was photographed and diagramed by the crime scene investigator, Sergeant Staty Lewis of the St. John the Baptist Sheriff's Office. His photos were shown to the jury. He testified that there was no sign of a struggle in the house. Sergeant Lewis identified the firearm, and testified that it was purchased by the defendant and tested for DNA. He testified that the casing from a semi-automatic handgun is unloaded to the right, and in this case, the casing was found to the right of the victim's body. Louisiana State Police Crime Laboratory firearms examiner Cheryl Swearingen testified that she tested the recovered cartridge and it was fired from the recovered weapon.

Dr. Erin O'Sullivan from the Orleans Parish Coroner's Office performed the autopsy. She testified that the victim had a gunshot wound to the head that entered behind the right ear and exited on the left side of the forehead. Due to the presence of stippling on the victim's skin (abrasions caused by gunpowder residue), Dr. O'Sullivan estimated that the gun was between a couple of inches and couple of feet away. Dr. O'Sullivan testified that the trajectory of the wound was back to front, upward and to the right. She did note that if the victim's head had been facing down, the trajectory would be downward.

The daughter of the victim and the defendant, Te'a Starks testified that she had spoken to her mother around 9:00 p.m. the night before her death. She had no indication that her mother intended to harm herself, and she testified that her mother seemed happy. Her mother had told her she was planning on leaving the defendant. She testified that the defendant was not happy about his wife leaving; he related to her his worries that Ms. Starks and her brother would not talk to him. The defendant had indicated to her, two weeks prior to the incident, that he was aware that the victim was involved in a serious relationship with another man. Ms. Starks testified that her parents were planning to get another house for her mother.

The defendant chose to take the stand in his own defense. The defendant testified that he came home from work around midnight on September 13, 2006. He tried to get his wife's attention, but she was on a lengthy telephone call. He showered, prepared his lunch for the next day, and went into the great room to go through a plastic box of his belongings. When he heard his wife get up and head towards the kitchen, he got up, turned off the lights, and went to the room to speak with her. According to the defendant, he asked his wife "what they going to do," and as he turned to talk to her, he stumbled into her, and both of them fell forward. After the gun went off, the defendant turned the lights on and his wife had fallen in a seated position. He called 9-1-1, using the landline in the kitchen, but he was not

sure if the call connected, so he went to the bedroom to continue the call from a second landline. The defendant claimed that he called 9-1-1 back from his wife's cell phone so that he could move and follow the operator's directions. He then called his father and Mr. Eugene.

The defendant stated that he tried not to disturb or "stage" the scene, but he placed the gun on the floor. He turned on exterior lights so the ambulance could see his address. He stated that he put the phone down inside by the chair, and went outside when he heard the officers telling him what to do. He took off his shirt to show the officers he did not have any weapons.

The defendant testified that he loved his wife and did not intentionally shoot her. He claimed that despite the allegation he was angry because his wife was leaving or having an affair, he had known about the affair and they had "talked about all these things." He testified that he knew his wife had been seeing three men, including his electrician Chris Evans. He had spoken to an attorney to discuss the divorce weeks prior to this incident.[4] He was going to help his wife and their kids get a new home because they were friends. He testified that he has poor circulation and difficulty walking, often using a cane. He also suffered with erectile dysfunction that limited intimacy with his wife. When cross-examined on why he had the gun in his hand, he answered that he had the gun in his hand when he walked in the house as he carries a gun every day for personal protection. He is familiar with weapons because he was a U.S. Marine for six years.

The defense counsel's closing argument urged the jury to find the defendant not guilty in this "tragic accident." During the State's rebuttal closing argument, the prosecutor stated that the defense had given three different version of events.

_____

[4] Attorney Lee Rand testified that he had consulted with the defendant on August 31, 2016 regarding a divorce, property division, support, and the children. Mr. Rand testified that the defendant was not really upset but wanted to move on as he felt his marriage was over and his wife had several extramarital affairs over the years.

The first was that the shooting was an accident, then the defendant claimed he was insane at the time. While defense counsel objected that there was no testimony and nothing said to that effect, the prosecutor stated the defendant pled to that and "it's going to be included in the jury verdict."

ANALYSIS

In his sole assignment of error, defendant asserts that his trial counsel was constitutionally ineffective.

Under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution, a defendant is entitled to effective assistance of counsel. *State v. Taylor*, 18-126 (La. App. 5 Cir. 10/17/18), 258 So.3d 217, 227, *writ denied*, 18-1914 (La. 5/20/19), 271 So.3d 200. The Sixth Amendment does not guarantee errorless counsel or counsel judged ineffective by hindsight, but counsel reasonably likely to render effective assistance. *State v. Howard*, 09-928, (La. App. 5 Cir. 5/25/10), 37 So.3d 1099, 1106. A claim of ineffective assistance of counsel must satisfy the two-prong test of showing that counsel's performance was deficient and that the deficiency prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Counsel's performance is deficient when it falls below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases as evaluated from counsel's perspective at the time of the occurrence. *Id.* at 689-90. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. *Id.* at 687. To carry his burden, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the trial would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *State v. Woods*, 20-73 (La. App. 5

Cir. 9/9/20), 303 So.3d 403, 408-09, *writ denied*, 21-27 (La. 2/17/21), 310 So.3d 1150.

A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice. *Strickland,* 466 U.S. at 690; *State v. Morrison*, 45,620 (La. App. 2 Cir. 11/24/10), 55 So.3d 856, 868. The defendant must overcome the presumption that counsel's conduct falls within the wide range of reasonable professional assistance and that the challenged action "might be considered sound trial strategy." *Strickland,* 466 U.S. at 689; *State v. Dabney*, 05–53 (La. App. 5 Cir. 6/28/05), 908 So.2d 60.

The defendant asserts that his claim meets the two-prong test set forth in *Strickland, supra.* The defendant avers that defense counsel took on a burden of proof to establish by a preponderance of the evidence that defendant was not sane at the time of the offense, but counsel failed to act or have a strategy. The defendant indicates that the plea of not guilty and not guilty by reason of insanity should have been abandoned if there was no intention of supporting it. He asserts that counsel's silence on his sanity constitutes a deficient performance. He contends that defense counsel did not solicit any questions about his sanity on direct examination of the defendant. The defendant asserts that such questions could have been asked based on Dr. Salcedo's examination of defendant and his reports. He further avers that defense counsel did not mention in his closing arguments anything regarding defendant's sanity or potential psychological problems but instead simply let the judge read the instructions on his burden of proof on sanity and allowed the State to comment on defendant's sanity.

Defendant argues that counsel's deficient performance prejudiced him. He notes that potential jurors were repeatedly questioned about defendant's burden of proof regarding his sanity and that some jurors were struck from the panel because

of their responses regarding this issue. He further contends that the judge gave preliminary instructions about defendant's burden to prove his insanity and that the State reminded the jury of this burden in opening statements. Defendant argued that the result would have been different if the insanity defense had been abandoned because there would have been a better chance of conviction of a lesser offense.

In this case, the defendant chose to go to trial maintaining a plea (and re-entering a plea) of not guilty and not guilty by reason of insanity. In Louisiana, a legal presumption exists that a defendant is sane at the time of the offenses. La. R.S. 15:432. A defendant has the burden of proving the affirmative defense of insanity by a preponderance of the evidence. La. C. Cr. P. art. 652. To meet that burden, defendant must convince a jury that a mental disease or mental defect prevented him from distinguishing between right and wrong with reference to the conduct in question. La. R.S. 14:14; *State v. Silman*, 95-0154 (La.11/27/95), 663 So.2d 27.

Defendant asserts trial counsel failed to address the defendant's sanity. He argues that it was a failure—not a strategy—and can be addressed by this court on direct appeal. However, he argues that trial counsel could have called different expert witnesses, made different arguments in opening statement and closing arguments, and asked the defendant different questions. Thus, the defendant takes issue with defense counsel's trial strategy, relating to defense counsel's actions regarding what documents or witnesses could have been offered relating to defendant's sanity. A defense counsel's decision to call or not call a witness is a matter of trial strategy and is not *per se* evidence of ineffective assistance. *State v. Washington,* 00-1312 (La. App. 5 Cir. 5/16/01), 788 So.2d 596, 607, *writ denied*, 01-1718 (La. 5/3/02), 815 So.2d 94. An alleged error that is within the ambit of trial strategy does not establish ineffective assistance of counsel because "opinions

may differ on the advisability of such a tactic." *State v. Wise,* 13-247 (La. App. 5 Cir. 11/9/13), 128 So.3d 1220, 1230, *writ denied*, 14-253 (La. 9/12/14), 147 So.3d 703).

A claim of ineffective assistance of counsel is most appropriately addressed not on direct appeal, but through an application for post-conviction relief filed in the trial court where a full evidentiary hearing can be conducted. *State v. McDonald*, 04–550 (La. App. 5 Cir. 11/16/04), 889 So.2d 1039, *writ denied*, 04–3088 (La.4/1/05), 897 So.2d 599; *State v. Ledet*, 20-258 (La. App. 5 Cir. 1/27/21), 310 So.3d 810. When the record contains sufficient evidence to rule on the claim's merits and the issue is properly raised on appeal by assignment of error, it may be addressed in the interest of judicial economy. *State v. Howard*, 09-928 (La. App. 5 Cir. 5/25/10), 37 So.3d 1099, 1106. Where the record does not contain sufficient evidence to fully explore a claim of ineffective assistance of counsel, the claim should be relegated to post-conviction proceedings under La. C.Cr.P. arts. 924-930.8. *State v. Holt*, 08-1276 (La. App. 5 Cir. 5/26/09), 12 So.3d 502, 510, *writ denied*, 09-1681 (La. 3/26/10), 29 So.3d 1249.

This Court has held that ineffectiveness of counsel, relating to trial strategy, cannot be determined by review of the record on appeal but rather such a claim must be asserted by application for post-conviction relief where the issue can be considered through an evidentiary hearing to determine, among other things, the defense strategy and whether the defendant himself was aware of the strategy and acquiesced in it. *Howard*, 37 So.3d at 1107; *see also State v. Cambre*, 05-888 (La. App. 5 Cir. 7/25/06), 939 So.2d 446, 461, *writ denied*, 06-2121 (La. 4/20/07), 954 So.2d 158. The allegations of ineffective assistance of counsel for decisions relating to investigation, preparation, and strategy can only be sufficiently investigated in an evidentiary hearing where the defendant could present evidence beyond that contained in the record. *Wise*, 128 So.3d at 1230.

In a similar case where earlier psychiatric assessments indicated that a defendant was able to distinguish between right and wrong, the second circuit found that it was unable to gather a complete understanding of abandonment of the insanity defense to address an ineffective assistance of counsel claim on appeal. *See State v. Morrison*, 45,620 (La. App. 2 Cir. 11/24/10), 55 So.3d 856, 868. In that case, the defense counsel questioned the expert witnesses only on battered spouse syndrome, and not on their opinion regarding the defendant's ability to distinguish between right and wrong at the time of the offense. *Id.* Similarly, the defense counsel in that case stated in closing arguments that the defendant's ability to distinguish between right and wrong was not the defense in the case. *Id.* The *Morrison* court found that "this matter more properly lends itself to the presentation of evidence at a post-conviction hearing." *Id.* at 869.

In this case, it is not clear from the record before us whether counsel was ineffective in failing to formally abandon the defense of insanity by withdrawing the defendant's plea. While the Louisiana Supreme Court failed to address a claim of ineffective assistance of counsel in similar circumstances when it found it was "clear from the record such a defense would not have succeeded," the Court was persuaded by expert testimony presented at a prior evidentiary hearing which "showed even the most favorable interpretation of his psychiatric records would not have shown him insane under Louisiana law." *State ex rel. Busby v. Butler*, 538 So.2d 164, 168 (La. 1988). In the present case, the record does not provide this Court with the transcripts of prior sanity commission hearings to ascertain the possible expert witness testimony available to the defendant.

Thus, from the record before us, a complete understanding of the abandonment of the insanity defense cannot be gained for a determination of whether ineffective assistance of counsel occurred. With this insufficiency in the

20-KA-429                                      10

present record, we find this matter more properly lends itself to the presentation of evidence at a post-conviction hearing.

ERRORS PATENT

The record was reviewed for errors patent. La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990). While the Uniform Commitment Order (UCO) reflects that the defendant was charged with second degree murder in violation of La. R.S. 14:30.0, the correct citation should be La. R.S. 14:30.1. Additionally, the UCO reflects that both the disposition date and sentencing date occurred on October 14, 2019. The transcripts reflect that the sentencing date was October 14, 2019, and the disposition date, or date of conviction, was October 3, 2019.

Therefore, we remand this case for correction of the UCO to accurately reflect the noted discrepancies. *See State v. Brown*, 17-346 (La. App. 5 Cir. 12/13/17), 234 So.3d 1134 (wherein this Court remanded the matter to correct the statutory citation, among other things, in the UCO); *State v. Tillery*, 14-429 (La. App. 5 Cir. 12/16/14), 167 So.3d 15, *writ denied*, 15-106 (La. 11/6/15), 180 So.3d 306 (wherein this Court remanded the matter for correction of the adjudication date in the UCO).

The Clerk of Court for the 40th Judicial District Court is ordered to transmit the original of the corrected UCO to the appropriate authorities in accordance with La. C.Cr.P. art. 892(B)(2) and the Department of Corrections' legal department. *See State v. Doucet*, 17-200 (La. App. 5 Cir. 12/27/17), 237 So.3d 598, *writs denied*, 18-77 (La. 10/8/18), 253 So.3d 789 and 18-196 (La. 11/5/18), 255 So.3d 1052, *cert. denied*, --U.S.--, 139 S.Ct. 2676, 204 L.Ed.2d 1079 (2019).

Additionally, while the minutes reflect that the trial court notified the defendant of the prescriptive period for applying for post-conviction relief, the

sentencing transcript does not show the defendant was actually so advised. Where the transcript and the minute entry conflict, the transcript prevails. *State v. Lynch* 441 So.2d 732, 734 (La. 1983). Therefore, we remand the case with an order to the trial court to provide the defendant with written notice of the prescriptive period in accordance with La. C.Cr.P. art. 930.8, and to file written proof in the record that defendant received such notice. *See State v. Gordon*, 06-8 (La. App. 5 Cir. 3/30/06), 928 So.2d 689, 695, *on reh'g* (5/15/06), *writ denied sub nom. State v. Gorden*, 06-2319 (La. 4/20/07), 954 So.2d 159.

CONCLUSION

As we find the record before us on appeal insufficient to address the defendant's complaint, we remand the case for a contradictory hearing on the claim of ineffective assistance of counsel to allow the defendant an opportunity to develop an adequate record on the issue at this time and reserve his right to appeal from an adverse decision. Furthermore, we order the trial court to comply with the above instructions to correct the Uniform Commitment Order.

**<u>REMANDED WITH INSTRUCTIONS</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **NOVEMBER 3, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

### 20-KA-429

**E-NOTIFIED**
40TH DISTRICT COURT (CLERK)
HONORABLE J. STERLING SNOWDY (DISTRICT JUDGE)
CHRISTOPHER B. CORTEZ (APPELLEE)      HONORABLE BRIDGET A. DINVAUT      SAMUEL H. WINSTON (APPELLANT)
                                      (APPELLEE)

**MAILED**
KARA A. LARSON (APPELLANT)
ATTORNEY AT LAW
1700 JOSEPHINE STREET
NEW ORLEANS, LA 70113