MARC E. JOHNSON, Judge.
| aDefendant, Darrell Tillery, seeks review of one of his convictions for aggravated rape from the 24th Judicial District Court, Division “E”. For the following reasons, we affirm Defendant’s conviction and sentence. Additionally, we remand the matter for correction of the commitment order.
FACTS AND PROCEDURAL HISTORY
On June 7, 2012, a Jefferson Parish Grand Jury indicted Defendant with one count of aggravated rape of a known juvenile (B.S.),[1] a violation of La. R.S. 14:42 (count one), and one count of sexual battery of the same juvenile, a violation of La. R.S. 14:43.1 (count two). Defendant was arraigned on June 8, 2012, and pleaded not guilty.
On November 15, 2012, Defendant was charged by a superseding indictment with the two previous counts of aggravated rape and sexual battery of B.S. and two 13additional counts of aggravated rape (counts three and four) of two separate juveniles (K.W. and D.I.).
After jury selection on November 19, 2013, the court was informed that Defendant had not been arraigned on the superseding indictment. Defendant waived the reading of the superseding indictment and entered a plea of not guilty to all counts. Trial commenced before a 12-person jury with the reading of the superseding indictment and Defendant’s not guilty pleas to the charged offenses.
On November 20, 2013, after the presentation of nine out of ten of the State’s witnesses, the State made an oral motion to amend the dates of the offense on count three of the indictment. The State’s oral motion to amend the indictment was granted, and Defendant’s motion for mistrial was denied.
At trial, K.W., the victim in count four, testified that Defendant was married to her mother from 1987 to 1990. During that time, K.W. was between the ages of six and nine. K.W. testified that when Defendant was living with them he would enter her bedroom at night, remove her brother from the room they shared, undress her, touch her vagina, and have sex with her. Defendant would then warn her not to tell her mother. As a child, K.W. never told anyone about the sexual abuse, but eventually informed her husband in an attempt to explain her “strange and weird” behavior. K.W. explained that she would *18 jump when her husband touched her. K.W. further testified that at some point after informing her husband, her brother told their mother about the sexual abuse, although K.W. testified that she was unaware at the time that her brother knew about it. According to K.W., her mother stated that she did not know about the sexual abuse by Defendant.
In 2012, K.W. was contacted by a close family friend, D.I. (the victim in count three). D.I. asked her if she had seen the Times Picayune newspaper article about Defendant’s arrest on charges of molestation. At the time, she had not seen |4the article; however, after reading it, K.W. contacted the Jefferson Parish Sheriffs Office and provided a statement to them regarding the sexual abuse.
K.W.’s brother, R.S., testified that as a child he recalled entering the bedroom he shared with his sister and seeing K.W. on the bed, undressed from the waist down, and Defendant at the foot of the bed, on top of her. R.S. left the room quickly because he knew that he saw something he “wasn’t supposed to see.” Defendant then exited the bedroom a short time later, hit R.S. on the head and told him he “didn’t see nothing.” At the time R.S. did not talk to his sister or his mother about the incident; however, at some point after K.W. told their mother, R.S. informed them of what he witnessed.
D.I. testified that her mother dated Defendant’s brother in 1992. At some point, Defendant lived with them while her mother and Defendant’s brother were dating. During that time, Defendant would take her out of her bed when everyone was sleeping, bring her into his room, and have sex with her while she was pinned down as he covered her mouth. After he was done having sex with her, he would give her a dollar and tell her not to tell anyone. D.I. testified that she tried telling her mother about the sexual abuse, but her mother did not believe her. D.I. also told her great-grandmother who then had D.I.’s grandmother remove D.I. from her mother’s home to live with her. D.I. first reported Defendant to the police after she saw the newspaper article about his arrest. She testified that she gave a statement to the police and later forwarded the newspaper article to K.W. On cross-examination, D.I. clarified that she told the police the abuse took place on and off while Defendant was living with them in 1994, and that she was seven or eight years old at the time.[2]
|5B.S., the victim in counts one and two, testified that her mother was in a relationship with Defendant for approximately ten years. She further testified that she was four years old when Defendant first had sex with her. She stated that Defendant had sex with her more than 20 times. Defendant would tell B.S. “they have crazy people in this world, why would you want to have sex with them when you can have sex with me.” He also told B.S. not to tell her mother because he would go to jail. In 2003, when B.S. was ten years old she reported the incidences of rape to her mother, who began to cry. The next day she wrote a letter to her mother recanting her allegations because it “broke her heart” to see her mother “hurting and crying.” B.S. testified that she tried to stop - Defendant from raping her, but he would still force himself on her stating “this is the last time.” The abuse continued until Defendant moved out when B.S. was 14 years old.
*19 B.S. now receives' therapy and is on medication for Depressive Traumatic Stress Disorder. B.S. testified that when she was in high school she had a “mental breakdown” and eventually reported the incidences of rape to her cousin and her sister who then told B.S.’s mother.[3] B.S.’s mother questioned B.S. about the abuse and they then reported Defendant to the police in 2011.
B.S.’s mother, S.S., testified that she was in a relationship with Defendant between 1997 and 2005. Defendant lived with her and her daughter during that time. S.S. testified that she and Defendant separated in 2005, but that he would still come over to her house. She further testified that in 2008 B.S. told her about the sexual abuse and that she broke down when hearing about it. Defendant was present at the time and denied sexually abusing B.S. The next day,' B.S. wrote a note to her mother recanting the allegations. S.S. testified that she felt relieved | (¡because she wanted to believe it was not true. A couple of years later, S.S. called the police to report the sexual abuse when her eldest daughter, R.S., informed her that Defendant molested B.S.
Dr. Neha Mehta testified as an expert in the field of child sexual abuse. She explained to the jury various concepts seen in cases of child sexual abuse including grooming, delayed disclosure, recantation, and the reasons for the lack of physical evidence of abuse in most cases. Dr. Meh-ta further testified that in over 95% of the cases where children are sexually abused, the sexual abuse is committed by a relative or close friend.
Detective Robert Miles of the Jefferson Parish Sheriffs Office testified that pursuant to the interviews he conducted with B.S. and her mother, he authored a warrant for Defendant’s arrest. After Defendant was indicted by a Grand Jury, Detective Miles was notified that two other victims, D.I. and K.W., also came forward to report sexual abuse by Defendant.
On cross-examination, Detective Miles identified D.I.’s statement in which it referenced 1994 as the year Defendant lived with D.I. and the year the incidences of rape occurred, despite the detective’s mistaken belief that it occurred in 1992.
The State rested and the defense called Darremika Tillery, Defendant’s daughter. Ms. Tillery testified that she spent the weekends with her father when he was dating B.S.’s mother.[4] Ms. Tillery stated that on the weekends she shared a bedroom with B.S., and that during that time, she never witnessed her father come into the bedroom.
Lastly, Defendant testified as to the dates he lived with each of the three victims. Defendant stated that he was married to K.S.’s mother from 1987 to 1991, and that K.S. was five or six years old at the time they were married. He farther 17testified that he then lived with B.S.’s mother from 1997 to 2004, and that B.S. was three years old at the time. Defendant then stated that when his brother dated D.I.’s mother, he lived with them for a few months; however, he could not recall the dates. Defendant denied having sexual intercourse with any of the victims, de *20 nied raping them, denied touching them inappropriately, and denied having any sexual desire for a child.
At the conclusion of the trial, the jury returned verdicts of guilty as charged on all four counts. On November 26, 2013, Defendant filed a motion for new trial, which was denied by the trial court prior to sentencing. After waiving sentencing delays, the trial court sentenced Defendant to three consecutive life sentences on counts one, three, and four and to ten years imprisonment at hard labor on count two, to be served concurrently with the sentence imposed on count one. Defendant’s life sentences were ordered to be served without benefit of parole, probation, or suspension of sentence. Defendant was further advised of the sex offender reporting requirements and ordered to comply with sex offender registration for life. The trial court granted Defendant’s motion for appeal filed at the time of sentencing. The instant appeal follows.
ASSIGNMENTS OF ERROR
On appeal, Defendant raises one counseled assignment of error and four pro se assignments of error: In his counseled assignment, Defendant alleges that the amendment of the indictment after the State effectively completed its case resulted in an unfair trial. In his pro se assignments of error, Defendant alleges: 1) the trial court erred in allowing Dr. Neha Mehta testify as an expert witness in the field of child sexual abuse in violation of his Fourteenth Amendment right to due process and a fair trial; 2) the provision of the Louisiana Constitution allowing non-unanimous jury verdicts violates the equal protection clause of the 14th [ RAmendment; 3) his Sixth Amendment right of due process to be tried upon a valid and legal indictment was violated; and 4) his continued incarceration is in violation of his Sixth and Fourteenth Amendment rights because the court lacked subject matter jurisdiction due to an indictment that failed to name the accusers.
LAW AND ANALYSIS

Amended Bill of Indictment

In his sole counseled assignment of error, Defendant argues that the trial court erred in permitting the State to amend the indictment after the State presented its case, resulting in prejudicing Defendant’s ability to present a defense. Specifically, Defendant submits that by granting the State leave to amend the date of the offense in count three, Defendant’s defense that he did not live with D.I. in 1992 and, therefore, could not have committed the aggravated rape as alleged in the original indictment, was taken away from him in the middle of trial. Accordingly, Defendant alleges that the trial court’s denial of his motion for mistrial based on the amendment denied him a fair trial.
The State responds that the date on which the aggravated rape of D.I. occurred is not an essential element of the offense; thus, the trial court did not err in causing the indictment to be amended to correct the defect during trial. Further, the State argues that the trial court did not err in determining that Defendant failed to establish prejudice by the amendment, having knowledge that D.I. stated to the police that the rapes occurred in 1994.
On the second day of trial, November 20, 2013, the State moved to amend count three of the indictment charging Defendant with aggravated rape of a juvenile [D.I.] “on or between January 1, 1992 and December 31, 1992” to charge defendant with committing aggravated rape of a juvenile [D.I.] “on or between January 1, 1993 and December 31, 1994.” In support *21 of the amendment, the State |9argued that the original 1992 date was an oversight and that the date of the offense is not an essential element of the crime of aggravated rape and, thus, could be amended at any time with or without leave of court. The State further noted that in all of D.I.’s statements to the police, she reported that Defendant sexually abused her in 1994 and that all of the discovery tendered to Defendant in advance of trial contained the correct date. Accordingly, the State concluded that the amendment would not prejudice Defendant.
Defendant argued that he would be prejudiced by the amendment because his defense was that he was not living at D.I.’s residence in 1992, the year in which the aggravated rape was alleged to have been committed in the original indictment. However, Defendant admitted that the discovery he was provided prior to trial referenced 1994 as the date of the alleged aggravated rape in count three. Defendant further argued that the date of the offense is an essential element of the crime of aggravated rape and should not be permitted to be amended during trial.
The trial court granted the State leave to amend count three of the indictment, finding that the date is not an essential element of aggravated rape and may be corrected at any time. The trial court further reasoned that Defendant was not prejudiced by the amendment because open-file discovery had been provided by the State from the inception of the case and the date at issue was reflected in the material presented. Defendant moved for a mistrial, which was denied by the trial court.[5]
Article 487 of the Louisiana Code of Criminal Procedure provides that an indictment shall not be invalid or insufficient because of any defect of form. It further states that the court may cause an indictment to be amended at any time |inwith respect to a defect of form.[6] La.C.Cr.P. art. 468 provides that the date or time of the commission of the offense need not be alleged in the indictment, unless the date or the time is essential to the offense. Hence, if date or time is not essential to the offense, a mistake respecting the date on which the offense occurred is only a defect of form, which may be corrected at any time with leave of court. State v. Sharp, 321 So.2d 381 (La.1975); State v. Hubbard, 279 So.2d 177 (La.1973); State v. Pickett, 261 La. 237, 259 So.2d 307 (1972); State v. Martin, 255 La. 961, 233 So.2d 898 (1970).
The date of the offense is not an essential element of the crime of aggravated rape. See State v. Glover, 304 So.2d 348 (La.1974); State v. Taylor, 525 So.2d 1118, 1120 (La.App. 5th Cir.1988), writ denied, 536 So.2d 1212 (La.1989); State v. Frith, 436 So.2d 623 (La.App. 3rd Cir. 1983), writ denied, 440 So.2d 731 (La.1983); State v. Johnson, 95-1002 (La.App. 3 Cir. 3/6/96); 670 So.2d 651. Thus, the trial court’s allowance of the amendment was proper. Accordingly, the question remains whether Defendant was prejudiced in his defense on the merits by the defect *22 with respect to which the amendment was made.
On motion of the defendant, the court shall grant a continuance for a reasonable time, if it is shown that the defendant has been prejudiced in his defense on the merits by the defect.[7] “In determining whether the defendant has been | ^prejudiced in his defense upon the merits, the court shall consider all the circumstances of the case and the entire course of the prosecution.” La.C.Cr.P. art. 489. The defendant has the burden of establishing that an amendment has prejudiced his defense. The mere allegation by the defendant that the defense will be affected by the amendment of the indictment does not constitute a showing of prejudice so as to render a trial court’s refusal of a continuance reversible error. Johnson, 670 So.2d at 657.
In State v. McCoy, 337 So.2d 192 (La.1976), the bill of information charged that the defendant committed aggravated crime against nature “on or about April 9, 1975.” Upon resting its case, the State moved to amend the bill of information so that the stated date of the crime charged would read “between the hours of 9:00 p.m. on April 8, 1975 through the hours of 2:00 p.m. on April 9, 1975.” Id. at 194-95. Over the defendant’s objection, the trial court granted the state’s motion. On appeal, the Louisiana Supreme Court held that since the date on which the aggravated crime against nature occurred is not an essential element of the offense, the allowance of the amendment was proper. The court further noted that the defendant made no motion for a recess, nor had he made a showing of surprise or prejudice resulting from the amendment. Id. at 195.
In Johnson, supra, the initial indictment charged the defendant with aggravated rape of a child “on or about the 1st day of January, 1986 and April, 1989.” The trial court permitted the State to amend the indictment on the first day of trial, to charge the defendant with committing aggravated rape “between January 1, 1986 and April 1989.” The defendant moved for a continuance, claiming he was prejudiced by the amendment. The trial court denied the defendant’s motion. On appeal, the defendant argued the trial court erred in permitting the State to substantively amend the bill of indictment on the first day of |1?trial, and in failing to grant him a continuance. Johnson, 95-1002; 670 So.2d at 656. Specifically, the defendant argued that his defense was prejudiced by the amendment because the time frame was “so greatly expanded at the last minute,” and that prior to the amendment the de *23 fendant had no reason to gather evidence of his whereabouts and conduct for the new time period.
The Third Circuit held the trial court did not err in allowing the State to amend the indictment, finding the date of the offense is not an essential element of aggravated rape. The trial court further noted that at trial the defendant argued he was prejudiced by the amendment because he would have presented more evidence about the various men present in the victim’s home throughout her life. However, the record showed the defendant was able to present such evidence through the testimony of the victim and the victim’s mother. Moreover, the defendant admitted to having received the victim’s statement long before trial, which clearly indicated that the alleged acts of rape occurred on many occasions. Accordingly, the Third Circuit held the defendant failed to establish how the trial court abused its discretion in denying the defendant’s continuance. Id. at 657.
Lastly, in State v. Creel, 540 So.2d 511 (La.App. 1st Cir.1989), writ denied, 546 So.2d 169 (La.1989), the defendant argued on appeal that it was improper for the trial court to allow the victim to testify that one of the charged offenses of aggravated crime against nature was committed in November of 1985, instead of during the summer of 1985, as alleged in the bill of information. Relying on La.C.Cr.P. art. 487, the First Circuit noted that an indictment may be amended at any time with respect to a defect of form, and that the date on which an aggravated crime against nature occurs is not an essential element of the offense. Thus, the First Circuit found that the State is not restricted in its evidence to the date set out in the indictment. The court also noted that the defendant made only a generalized | ^allegation of prejudice, and that the State did not withhold the dates and introduce them at trial for the first time to the defendant’s surprise. Rather, in finding no prejudice to the defendant from the variance, the First Circuit reasoned that through open-file discovery, the State supplied the defendant with all available information concerning the dates.
In the present matter, Defendant admitted that “without question” the discovery provided to him by the State referenced 1994 as the year of the alleged aggravated rape of D.I. However, Defendant argued that the indictment technically enumerated 1992 as the year of the alleged crime, and because he could demonstrate that he did not live at D.I.’s residence in 1992, he therefore could not have committed the crime as alleged in count three. Accordingly, by permitting the State to amend the date in count three of the indictment mid-trial, Defendant maintained that his defense was prejudiced.
As previously noted, the defendant has the burden of establishing that an amendment to the bill of information prejudiced his defense. Johnson, supra. Here, as stated by the trial court, and undisputed by Defendant, the State did not withhold the dates of the aggravated rape in count three and introduce them at trial to Defendant’s surprise. Rather, the State provided Defendant with all available information concerning the dates of the charged offenses through open-file discovery which contained the scope of D.I.’s testimony, including the fact that the aggravated rape of D.I. occurred in 1994 as testified to at trial.[8] Having been provided with this information well in advance of *24 trial, Defendant possessed the requisite material to defend the allegations against him. Defendant did not suggest to the trial court that his defense strategy would have been altered by earlier notice. | ^Although he admits that he received discovery with the correct date, he submits that his defense rested largely upon the date listed in count three of the indictment, having not resided with D.I. in 1992. He does not claim that the change in dates would have caused him to gather additional evidence of his whereabouts for the new time period, or additional information concerning the men living with D.I. at that time. To the contrary, at trial Defendant testified that he could not recall the dates during which he resided with his brother at D.I.’s residence.
Based on the foregoing, we find the date of the offense was not an essential element of the aggravated rape charge. Therefore, we find the trial court did not abuse its discretion in finding Defendant was not prejudiced from the amendment to the date of the offense alleged in count three of the indictment.

Expert Witness

In his first pro se assignment of error, Defendant contends that he was prejudiced when the trial court permitted Dr. Neha Mehta to testify as an expert witness in the field of child sexual abuse. Defendant maintains that the record is silent regarding any efforts made by the trial court to determine whether Dr. Meh-ta’s ability to diagnose sexual abuse was well-founded. Defendant further argues that Dr. Mehta’s “inadmissible” expert testimony served to unduly bolster the testimony of the victims, making their testimony more believable than it otherwise would have been. Thus, Defendant asserts that the admission of Dr. Mehta’s expert testimony was not harmless. Defendant also calls into question Dr. Mehta’s credentials as they relate to her admission as an expert.
At trial, defense counsel stipulated to Dr. Mehta’s expertise in the field of child sexual abuse. There were no objections lodged throughout the doctor’s testimony during which she explained to the jury various concepts seen in cases of child sexual abuse including grooming, delayed disclosure, recantation, and the | ^reasons for the lack of physical evidence of abuse in most child sexual abuse cases.
As a general matter, under La. C.E. art. 702, “if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify ... in the form of an opinion or otherwise.” State v. Mosley, 08-1318 (La.App. 5 Cir. 5/12/09); 13 So.3d 705, 714 writ denied, 09-1316 (La.3/5/10); 28 So.3d 1002; State v. Higgins, 03-1980 (La.4/1/05); 898 So.2d 1219, 1239, cert. denied, Higgins v. Louisiana, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005).
The failure to raise an objection to the admissibility and reliability of an expert’s testimony constitutes a waiver of such an objection. State v. Perry, 08-1304 (La.App. 3 Cir. 5/6/09); 9 So.3d 342, 349, writ denied, 09-1955 (La.6/25/10); 38 So.3d 352. A contemporaneous objection must be made to the disputed evidence or testimony in the trial court record to preserve the issue for appellate review. See La. C.E. art. 103 and La.C.Cr.P. art. 841. Accordingly, we find, as to Dr. Mehta’s testimony, Defendant waived any objection to her testimony. Thus, we decline to review this issue on appeal.

Non-unanimous Jury Verdicts

In Defendant’s second pro se assignment of error, he challenges the con *25 stitutionality of La.C.Cr.P. art. 782(A), which allows non-unanimous jury verdicts. In particular, he argues that the jury verdicts as to counts one and four should be reversed because non-unanimous verdicts violate the Sixth and Fourteenth Amendments of the United States Constitution.[9] In this regard, h (¡Defendant argues that La.C.Cr.P. art. 782 violates equal protection because racial discrimination was a “substantial” or “motivating” factor behind the enactment of the constitutional provision.
The record reflects that Defendant failed to file a motion to declare unconstitutional the non-unanimous jury verdict portions of either La. Const, art. I, § 17(A) or La.C.Cr.P. art. 782(A). Additionally, Defendant failed to object to the jury instruction informing the jury of the requirement that 10 of 12 jurors must concur to render a verdict, as per La.C.Cr.P. art. 782(A). Further, defense counsel did not object to the verdicts after they were rendered.
While there is no single procedure for attacking the constitutionality of a statute, it has long been held that the unconstitutionality of a statute must be specially pleaded and the grounds for the claim particularized.[10] State v. Hatton, 07-2377 (La.7/1/08); 985 So.2d 709, 719-20 (citing State v. Schoening, 00-0903 (La.10/17/00); 770 So.2d 762, 764 (citing Vallo v. Gayle Oil Co., 94-1238 (La.11/30/94); 646 So.2d 859, 864-65)). Also, La.C.Cr.P. art. 841 provides that an irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence. In order to seek appellate review of an alleged trial court error, a party must make a contemporaneous objection at trial, and he must-state the grounds for the objection. La.C.Cr.P. art. 841; State v. Gaal, 01-376 (La.App. 5 Cir. 10/17/01); 800 So.2d 938, 949, writ denied, 02-2335 (La.10/3/03); 855 So.2d 294.
Having failed to sufficiently raise this alleged error in the trial court, we find *26 Defendant is not entitled to have this issue reviewed and considered by this Court on appeal. (See State v. Brooks, 12-226 (La.App. 5 Cir. 10/30/12); 103 So.3d 608, writ denied, 12-2478 (La.4/19/13); 111 So.3d 1030, finding that because the defendant failed to challenge the constitutionality of non-unanimous jury verdicts in the trial court, the defendant was not entitled to have the issue reviewed and considered by this Court; La.C.Cr.P. art. 841(A); also, in State v. Young, 04-1318 (La.App. 5 Cir. 4/26/05); 902 So.2d 461, 470 and State v. Fasola, 04-902 (La.App. 5 Cir. 3/29/05); 901 So.2d 533, 544, writ denied, 05-1069 (La.12/9/05); 916 So.2d 1055, this Court declined to consider the defendants’ constitutional arguments that the conviction based on a non-unanimous verdict was invalid absent an objection raised in the trial court; See also State v. Rubens, 10-1114 (La.App. 4 Cir. 11/30/11); 83 So.3d 30, writs denied, 12-0374 (La.5/25/12); 90 So.3d 410 and 12-399 (La.10/12/12); 99 So.3d 37, where the defendant was procedurally barred from raising issue of unconstitutionality of non-unanimous jury verdict where the record did not reflect that defendant objected to the jury instruction under La.C.Cr.P. art. 782(A).)

Sixth Amendment Violation and Lack of Subject Matter Jurisdiction

In his third pro se assignment of error, Defendant contends that the grand jury indictment which charged him with three counts of aggravated rape was invalid because it failed to “charge the necessary element of or the underlining elements which is required to constitute the offense.” Accordingly, without a valid indictment, Defendant maintains that the trial court was without jurisdiction to try and sentence Defendant for aggravated rape.
|1sIn his fourth pro se assignment of error, Defendant argues the trial court lacked jurisdiction to prosecute his case because the names of the victims were not contained in the indictment. Defendant maintains that the failure to identify the victims by name prejudiced him in establishing a defense.
An accused shall be informed of the nature and cause of the accusation against him. La. Const, art. I, § 13. That requirement is implemented by La.C.Cr.P. art. 464, which provides:
The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.
Louisiana Code of Criminal Procedure article 465 authorizes the use of specific short-form indictments in charging certain offenses, including aggravated rape. See La.C.Cr.P. art. 465(A)(39). The constitutionality of short-form indictments has been consistently upheld in capital and mandatory life sentence cases. See State v. Baylis, 388 So.2d 713, 718-19 (La.1980); State v. Liner, 373 So.2d 121, 122 (La.1979) (per curiam). When those forms are used, it is intended that a defendant may procure details as to the statutory method by which he committed the offense through a bill of particulars. Baylis, 388 So.2d at 719; State v. Johnson, 365 So.2d 1267, 1270 (La.1978); La.C.Cr.P. art. 465, Official Revision Comment (b).
Initially it is noted that there was no objection to these alleged irregularities with respect to the indictment prior to trial. Thus, under La.C.Cr.P. art. 841, we find Defendant failed to preserve this issue for appellate review. Nevertheless, the *27 indictment in this ease did not prejudice Defendant.
|19La.C.Cr.P. art. 465(A)(39) provides that aggravated rape may be charged by the following specific indictment form: “A.B. committed aggravated rape upon CD.” Here, in three separate counts, it was alleged that Defendant “violated La. R.S. 14:42 in that he did commit aggravated rape upon a Known Juvenile (DOB 4/16/1993MDOB 12/13/1985)/][ (DOB 9/2/1981) ].”[11] The indictment conforms to the short form criteria set forth under La.C.Cr.P. art. 465,[12] but.lacks compliance with La.C.Cr.P. art. 473 which provides:
When the name of the person injured is substantial and not merely descriptive, such as when the injury is to the person, as in murder, rape, or battery, the indictment shall state the true name of the victim or the name, appellation, or nickname by which he is known. If the name, appellation, or nickname of the victim is not known, it is sufficient to so state and to describe him as far as possible. In stating any name of a victim it is sufficient to state a surname, a surname and one or more given names, or a surname and one or more abbreviations or initials of a given name or names.[13]
(Internal footnote added.)
The indictment does not contain the names of the three victims, instead providing “Known Juvenile” and their dates of birth. Despite the non-compliance with La.C.Cr.P. art. 473, we find that this error was harmless since Defendant was not prejudiced by surprise or lack of notice. Here, the State provided more than ample discovery to the defense through open-file discovery from the inception of | snthe ease. Among this discovery were the statements of the victims,[14] the 9-1-1 phone call made by D.I., B.S.’s medical records, and the warrant of arrest identifying B.S. as the first reporting victim.
Moreover, a preliminary hearing was conducted with respect to the original indictment which charged Defendant with *28 aggravated rape and sexual battery of B.S. During this hearing the investigating officer went into great detail about the alleged incidents of abuse. Having been provided with this information well in advance of trial, the failure to identify the victims by name in the indictment did not prejudice Defendant in establishing a defense. (See State v. Alfaro, 13-39 (La.App. 5 Cir. 10/30/13); 128 So.3d 515, 531-32, writ denied, 13-2793 (La.5/16/14); 139 So.3d 1024, where the defendant argued that the indictment was invalid because it did not include the name of the juvenile rape victim, instead providing “known juvenile (DOB 10/01/1996).” This Court found that despite the noncompliance with La.C.Cr.P. art. 473, the error was harmless since the defendant was not prejudiced by surprise or lack of notice where the State provided ample discovery to the defense, including police reports and the victim’s medical records; See also State v. Evans, 03-0752 (La.App. 5 Cir. 12/9/03); 864 So.2d 682, 697, writ denied, 04-0080 (La.5/7/04); 872 So.2d 1079, finding failure to include rape victim’s name in indictment harmless error because the defendant was not prejudiced by surprise or lack of notice where the State had provided a copy of its entire file to him).[15]
| nError Patent Discussion
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990).

Error 1

Defendant was not rearraigned after the State was granted leave to amend count three of the indictment to cure a defect as to the date of the alleged offense. Rearraignment after amendment of the bill of information is not required where the substance of the charge has not been changed. The purpose of an arraignment is to notify a defendant of the charge against him. La.C.Cr.P. art. 551. Where amendment of the indictment or bill of information is designed to cure deficiencies in the charging instrument and not to alter the nature of the crime, a defendant is not entitled to be rearraigned on the amended indictment or bill of information. State v. Bluain, 315 So.2d 749 (La.1975); State v. *29 Jones, 587 So.2d 787 (La.App. 3rd Cir. 1991), writ denied, 590 So.2d 78 (La.1991); State v. Rodriguez, 476 So.2d 503 (La.App. 1st Cir.1985). Accordingly, we find corrective action is unnecessary.

Error 2

The record further reveals a discrepancy between the transcript and the State of Louisiana Uniform Commitment Order. The uniform commitment order reflects the date of the offenses as February 13, 2012; however, the record reflects that the offenses were actually committed on or between April 16, 1993 and April | gg15, 2005 (count one); on or between April 16, 2005 and April 16, 2007 (count two); on or between January 1, 1993 and December 12, 1994 (count three); and on or between January 1, 1987 and December 31,1990 (count four).
Additionally, the uniform commitment order reflects the date of adjudication as November 26, 2013; however, the record reflects that the date of adjudication was actually November 20, 2013. Where there is a conflict between the transcript and the minute entry, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983).
This Court has previously remanded a case for correction of the uniform commitment order in its error patent review. See State v. Lyons, 13-564 (La.App. 5 Cir. 1/31/14); 134 So.3d 36 (citing State v. Long, 12-184 (La.App. 5 Cir. 12/11/12); 106 So.3d 1136, 1142). Accordingly, to ensure accuracy in the record, we remand this matter and order that the uniform commitment order be corrected to reflect the correct dates of the offenses and the correct date of adjudication. We also direct the Clerk of Court for the 24th Judicial District Court to transmit the original of the corrected uniform commitment order to the officer in charge of the institution to which Defendant has been sentenced and the Department of Corrections’ legal department. See Long, 12-184; 106 So.3d at 1142 (citing La.C.Cr.P. art. 892(B)(2)).

Errors

There is an inconsistency between the transcript and the commitment. Although the commitment indicates Defendant was sentenced to life imprisonment at hard labor on counts one, three, and four, in the transcript, the trial judge failed to state that the three life sentences were to be served at “hard labor.” If a discrepancy exists between the commitment and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732 (La.1983).
| asLa.C.Cr.P. art. 879 requires a court to impose a determinate sentence. If there were some discretion allowed by the applicable sentencing statute, the failure to indicate whether the sentence was to be served at “hard labor” would be an impermissible indeterminate sentence. State v. Pettus, 10-777 (La.App. 5 Cir. 5/24/11); 68 So.3d 28, 32, writ denied, 11-1326 (La.12/2/11); 76 So.3d 1176. However, here, the trial court imposed Defendant’s sentence pursuant to La. R.S. 14:42, which mandates the aggravated rape sentences to be at hard labor. Because the underlying statute, La. R.S. 14:42, requires the sentences to be served at hard labor, allowing no discretion to the trial judge, we find the error was harmless and requires no corrective action. See State v. Adams, 11-1052 (La.App. 5 Cir. 5/16/13); 119 So.3d 46, 58, writ denied, 13-1413 (La.12/6/13); 129 So.3d 531; State v. Stewart, 10-389 (La.App. 5 Cir. 5/10/11); 65 So.3d 771, 783-84, writ denied, 11-1245 (La.1/20/12); 78 So.3d 140.

Error ⅛

A review of the record reveals that the trial court failed to include that *30 Defendant’s sentence for violation of La. R.S. 14:43.1, sexual battery, is to be served without benefits. The law mandates that the sentence be served without benefit of parole, probation or suspension of sentence. La. R.S. 15:301.1(A) provides that in instances where the statutory restrictions are not recited at sentencing, they are included in the sentence given, regardless of whether or not they are imposed by the sentencing court. Given the self-activating nature of the benefits provision in this case, we find no need to correct the trial court’s failure to specify that Defendant’s sentence on count two is to be served without benefit of parole, probation, or suspension of sentence. (See State v. Williams, 00-1725 (La.11/28/01); 800 So.2d 790, where the Louisiana Supreme Court ruled that paragraph A of La. R.S. 15:301.1 self-activates the correction and eliminates the 124need to remand for a ministerial correction of an illegally lenient sentence, which may result from the failure of the sentencing court to impose punishment in conformity with that provided in the statute.)

Error 5

Lastly, the commitment and the State of Louisiana Uniform Commitment Order are inconsistent with the transcript in that the commitment and uniform commitment order reflect that Defendant was found guilty by a jury of “SEXUAL BATTERY CHILD UNDER 13,” and the transcript indicates that defendant was found guilty of “sexual battery.” Thus, we find that the commitment suggests that Defendant committed sexual battery of a child under thirteen when the record is unclear as to whether the jury determined that the battery of B.S. was committed when she was under 13 years old. Specifically, Defendant was indicted with sexual battery alleged to have occurred between April 16, 2005, and April 16, 2007. The victim of the sexual battery, B.S., was born on April 16, 1993, making her between the ages of 12 and 14 years old at the time of the alleged sexual battery. Accordingly, the jury could have found Defendant guilty of sexual battery when B.S. was 13 or 14 years old, rendering the description of the conviction inaccurate.[16]
Therefore, we order that the commitment and uniform commitment order be amended to accurately reflect Defendant’s sexual battery conviction.[17] We also direct the Clerk of Court for the 24th Judicial District Court to transmit the original of the corrected uniform commitment order to the officer in charge of the | ^institution to which Defendant has been sentenced and the Department of Corrections’ legal department. See Long, 12-184; 106 So.3d at 1142 (citing La.C.Cr.P. art. 892(B)(2)).
DECREE
For the foregoing reasons, we affirm Darrell Tillery’s conviction and sentence. *31 We remand the matter for correction of the Louisiana Uniform Commitment Order consistent with this opinion.

CONVICTION AND SENTENCE AFFIRMED: REMANDED FOR CORRECTION OF COMMITMENT

. The initials of the victim and those of certain family members are used under the authority of La. R.S. 46:1844(W)(3), which allows the court to protect the identity of a crime victim who is a minor or a victim of a sex offense by using his or her initials. State v. Greene, 06-667 (La.App. 5 Cir. 1/30/07); 951 So.2d 1226, 1239, writ denied, 07-0546 (La.10/26/07); 966 So.2d571.

. A.H., D.I.'s cousin, testified that she had personal knowledge that Defendant’s brother lived with D.I. and D.I.’s mother in 1994.

. B.S.’s cousin testified that when B.S. told him about the sexual abuse he felt uncomfortable so he called B.S.'s sister. After speaking with her sister they reported Defendant to the police. B.S.’s sister testified that she never personally witnessed B.S. being molested by Defendant.

. Elmiko Tillery, Defendant’s ex-wife, testified that Defendant had custody of their three children on weekends from 1991-1995. During that time, she did not suspect Defendant of any sexual abuse.

. The amendment made to the date of the alleged aggravated rape charged in count three was read to the jury prior to the testimony of the remaining witnesses.

. La.C.Cr.P. art. 487 further provides that before the trial begins the court may order an indictment amended with respect to a defect of substance; however, after the trial begins, a mistrial shall be ordered on the ground of a defect of substance. Thus, this article distinguishes between amendments related to form, which may be permitted at any time, and amendments of substance, which require a mistrial.

. Here, although Defendant did not move for a continuance upon the granting of the State’s motion to amend the indictment, he did state an objection and move for a mistrial on the basis that he was prejudiced by the amendment. A contemporaneous objection is necessary to preserve an issue for appellate review. See La.C.Cr.P. art. 841. Thus, Defendant preserved this issue for appeal.
But see Frith, supra, where the defendant was convicted of attempted aggravated rape of a juvenile and argued on appeal that the trial court erred in allowing the State to amend the indictment during trial to expand the date of the alleged offense from "October 1979” to "October, 1979 to May, 1980.” Id. at 627. The Third Circuit held that the date is not an essential element of the crime of attempted aggravated rape, and thus, the trial court properly allowed the State to amend the indictment. The court further found that although the defendant objected to the trial court’s ruling allowing the state to amend the indictment, no motion for a continuance was made by the defendant. Accordingly, the court held that "unless a defendant moves for a continuance on the ground that he is prejudiced thereby and requires additional time to prepare his defense, he cannot later contend that he was prejudiced by the amendment.” Id. (citing State v. Williams, 347 So.2d 184 (La.1977)).

. D.I.’s statement is not contained in the record before this Court. However, it is noted that Defendant does not dispute the trial court’s finding that he was presented with this information through open-file discovery well in advance of trial.

. Defendant was found guilty on counts one and four of aggravated rape — count one was by a verdict of ten to two, and count four was by a verdict of 11 to one. Defendant was also found guilty as charged of sexual battery (count two), and of a third count of aggravated rape (count three). The jury found defendant guilty on counts two and three by a unanimous verdict. Accordingly, Defendant only challenges the non-unanimous verdicts rendered as to counts one and four. See State v. Jacobs, 07-887 (La.App. 5 Cir. 5/24/11); 67 So.3d 535, 545-46, writ denied, 11-1753 (La.2/10/12); 80 So.3d 468, cert. denied, - U.S. -, 133 S.Ct. 139, 184 L.Ed.2d 67 (2012), where the defendant was convicted of two counts of second degree murder under La. R.S. 14:30.1 by a unanimous 12-person jury verdict. This Court found that the defendant did not have standing to challenge the constitutionality of La.C.Cr.P. art. 782(A) because he was convicted by a unanimous jury verdict on both counts. Id., 07-887; 67 So.3d at 535 (citing Burch v. Louisiana, 441 U.S. 130, 132 n. 4, 99 S.Ct. 1623, 1624, 60 L.Ed.2d 96 (1979)).

. In Unwired Telecom Corp. v. Parish of Calcasieu, 03-0732 (La.1/19/05); 903 So.2d 392, 399 n. 5 (on rehearing), the Louisiana Supreme Court reaffirmed the longstanding jurisprudential rule of law in Louisiana that litigants must raise constitutional attacks in the trial court, not the appellate courts, and the constitutional challenge must be specially pleaded and the grounds for the claim particularized. In doing so, however, the court noted the following exceptions to the general rule; (1) when a statute attempts to limit the constitutional power of the courts to review cases; (2) when the statute has been declared unconstitutional in another case; (3) when the statute applicable to the specific case becomes effective after the appeal is lodged in the higher court; or (4) when an act which is the basis of a criminal charge is patently unconstitutional on its face and the issue is made to appear as an error patent on the face of the record. Id. (citing Mosing v. Domas, 02-12 (La.10/15/02); 830 So.2d 967, 975 n. 2). See also, Mallard Bay Drilling, Inc. v. Kennedy, 04-1089 (La.6/29/05); 914 So.2d 533, 541.

. The indictment additionally provides the dates of the alleged offenses. However, the inclusion of additional facts does not affect the sufficiency of the specific indictment form authorized by statute. La.C.Cr.P. art. 465(B). See also State v. Straughter, 97-1161 (La.App. 4 Cir. 2/10/99); 727 So.2d 1283, 1288, writ denied, 99-0704 (La.7/2/99); 747 So.2d 14.

. See State v. Chairs, 12-363 (La.App. 5 Cir. 12/27/12); 106 So.3d 1232, 1240, writ denied, 13-0306 (La.6/21/13); 118 So.3d 413, where this Court held that the indictment conformed to the short form provided in La.C.Cr.P. art. 465(A)(32) for second degree murder when the indictment read that the defendant “violated R.S. 14:30.1 in that [he] did commit second degree murder of a known juvenile (DOB 4/29/2002).” Id., 106 So.3d at 1241.

. Notably, La. R.S. 46:1844(W)(l)(b) provides:
[i]n order to protect the identity and provide for the safety and welfare of crime victims who are minors under the age of eighteen years and of victims of sex offenses, notwithstanding any provision of the law to the contrary, an attorney for any party shall be prohibited from publicly disclosing, except during trial, the name, address, or identity of crime victims who at the time of the commission of the offense are under eighteen years of age or are victims of sex offenses, regardless of the date of commission of the offense. An attorney may lawfully utilize initials, abbreviations, or other forms of indefinite descriptions on documents used in the performance of their duties to prevent the public disclosure of the name, address, or identity of such crime victims. If the name, address, or identity of such a crime victim must be disclosed in a motion or pleading, that motion or pleading shall be filed with the court requesting that it be kept under seal.

. The victims' statements are not contained in the record before this Court. However, it is noted that at trial, Defendant did not dispute that open-file discovery was provided well in advance of trial.

. Moreover, this case is distinguishable from State v. Williams, 213 La. 1105, 36 So.2d 400 (1948), which is relied on by defendant in support of his argument. In Williams, the defendant was indicted with attempted aggravated rape of "a minor child chose name is unknown.” On appeal, the defendant argued that the trial court erred in overruling his motion in arrest of judgment which was based on the alleged fatally defective indictment in which he argued that the name of the person upon whom the offense was alleged to have been committed was not provided. The Louisiana Supreme Court found that while the indictment complied with the statute by alleging that the name of the injured person was unknown, the designation of the injured person solely as "a minor child” was not sufficient allegation to designate who the injured person was, and would therefore not serve as a bar to prosecution for the same offense in the future. The court reasoned that the term “a minor child” could "apply to any individual or person, male or female, below the age of 21 years.” It was further noted that the trial judge informed the court in a per curiam that the prosecuting witness was a minister who saw the acts of the defendant through a window, and that the victims were "two small girls.” These girls did not testify before a grand jury, and the district attorney and minister did not know the names of these girls at the time the indictment was drawn. Accordingly, the supreme court determined that it was uncertain which of the two girls the victim of the charged offense was.
Unlike Williams, in this case, the victims' dates of birth were referenced in the indictment, their identities were further provided through open-file discovery, and they also testified at trial against Defendant; thus, the concerns in Williams regarding notice and possible double jeopardy issues do not exist in the instant case.

. It is further noted that in 2006, when B.S. was 13 years old, La. R.S. 14:43.1 was amended to include an enhanced sentencing provision for sexual battery committed upon a victim under the age of thirteen. However, because B.S. was already thirteen at the time of the effective date of the amendment, Defendant is not subject to the enhanced sentencing provision, making the description of Defendant’s conviction for sexual battery of a child under thirteen misleading in terms of sentencing despite Defendant’s inability to be subject to the enhancement.

. See State v. Richardson, 09-715 (La.App. 5 Cir. 2/9/10); 33 So.3d 910, 914, writ denied, 10-0526 (La.10/15/10); 45 So.3d 1109, where this Court ordered the commitment amended to accurately reflect the defendant’s conviction for possession with intent to distribute heroin when the commitment suggested the defendant was convicted of distribution of heroin.