STATE OF LOUISIANA

VERSUS

SHYHEEM TYJE LOVE

NO. 24-KA-73

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 22-1207, DIVISION "F"
HONORABLE MICHAEL P. MENTZ, JUDGE PRESIDING

October 30, 2024

**JOHN J. MOLAISON, JR.**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
John J. Molaison, Jr., and Timothy S. Marcel

<u>**CONVICTIONS, MULTIPLE OFFENDER ADJUDICATION, AND**</u>
<u>**SENTENCES AFFIRMED; MATTER REMANDED**</u>
    **JJM**
    **FHW**
    **TSM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR DEFENDANT/APPELLANT,
SHYHEEM TYJE LOVE
    Prentice L. White

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
    Honorable Paul D. Connick, Jr.
    Thomas J. Butler
    Monique D. Nolan
    Molly Love
    Leo M. Aaron

**MOLAISON, J.**

The defendant, Shyheem Tyje Love, appeals his convictions and sentences for attempted second-degree murder, criminal damage to property, possession of a firearm by a convicted felon, and attempted obstruction of justice. He also challenges his multiple offender adjudication and sentence. For the reasons that follow, we affirm the convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

On March 25, 2022, the Jefferson Parish District Attorney filed a bill of information charging the defendant with attempted second-degree murder in violation of La. R.S. 14:30.1 and La. R.S. 14:27 (count one), simple criminal damage to property with the damage amounting to greater than $1,000 but less than $50,000 in violation of La. R.S. 14:56(B)(2) (count two), and possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1 (count three).[1] The defendant pled not guilty to all counts.

On July 7, 2023, the State filed a superseding bill of information charging the defendant with obstruction of justice in violation of La. R.S. 14:130.1 (count 4), in addition to the original three counts. The defendant pled not guilty to all counts. The case proceeded to trial, and on October 3, 2023, the jury unanimously found the defendant guilty as charged on counts one, two, and three and guilty of the lesser responsive verdict of attempted obstruction of justice on count four.

The trial court denied the defendant's motions for post-verdict judgment of acquittal and new trial, then sentenced the defendant to imprisonment at hard labor for forty-five years without benefit of parole, probation, or suspension of sentence on count one; imprisonment at hard labor for two years on count two; imprisonment at hard labor for twenty years without benefit of parole, probation,

---

[1] In count three, the State alleged that on or about February 22, 2018, the defendant violated La. R.S. 14:95.1 in that he had in his possession a firearm after having been previously convicted of second-degree battery in violation of La. R.S. 14:34.1 in case number 15-CR-98 in the 40th Judicial District Court.

or suspension of sentence on count three; and imprisonment at hard labor for ten years on count four, with the sentences to run concurrently. The State then notified the defense that it intended to file a multiple offender bill of information on count one.

The trial court denied the defendant's motion to reconsider the sentence and granted his motion for appeal on November 16, 2023. On January 29, 2024, the State filed a multiple bill alleging the defendant to be a third-felony offender on count one.

The trial court found the defendant to be a third felony offender on count one after the multiple bill hearing held on January 29, 2024. Afterward, the trial court vacated the sentence on count one and resentenced the defendant under the multiple bill statute to imprisonment at hard labor for forty-five years without the benefit of probation or suspension of sentence. The trial court ordered the enhanced sentence to run concurrently with the original sentences on counts two, three, and four. This timely appeal follows.

## FACTS

On December 22, 2021, police responded to reports of gunfire in Kenner. The victim, Donald Buggage, told police that he dropped off his friend, Brittany Lavigne, and her children at her residence located at 1620 Newport Place. In doing so, he parked in an alley between 1620 Newport Place and 42nd Street. He reported that Ms. Lavigne's boyfriend, "Shyheem," later identified as the defendant, told him to step out of the vehicle, a Nissan van. Mr. Buggage refused, and the defendant fired three shots at him, one of which struck him in the back.

Crime scene technicians examined the victim's vehicle and photographed the victim's injuries and bullet holes in the vehicle. Officers found a projectile in the driver's seat of the vehicle that they believed struck the victim. The frame of the vehicle had two more projectiles lodged in it. There were no shell casings or

firearms inside the victim's vehicle. There were no firearms on the victim's person, and there were no signs of a bullet exiting the vehicle. There was no evidence that gunshots were fired from inside of the van. Officers found three spent 9 mm casings in the area and a "live round" underneath the doormat by the front door of Ms. Lavigne's apartment.

Mr. Buggage, who was sixty-three years old, testified that he had known Ms. Lavigne for approximately twenty years and helped her care for her three children. The defendant and Ms. Lavigne had "been a couple" for approximately three or four months before the shooting. On the day of the shooting, Mr. Buggage went to work and took Ms. Lavigne's children with him. Ms. Lavigne later called him, stating that she was in jail, and asked him to come and pay her bond so she could be released. Mr. Buggage complied and then brought her and the children sleeping in the van to Ms. Lavigne's residence. Mr. Buggage testified that when they arrived, he saw the defendant walking up to the van and wondered "how the defendant knew to be there." Mr. Buggage testified that the defendant approached the van, and he (Mr. Buggage) lowered the front passenger window; the defendant told him to get out of the van because he wanted to talk to Mr. Buggage. Mr. Buggage refused to exit the vehicle, explaining that he knew the defendant must be "up to something." During this time, Ms. Lavigne was bringing her children into the residence one at a time. When Ms. Lavigne returned to get the last child, she told the defendant to leave. Mr. Buggage testified that the defendant stood there, raised his hand, pointed a gun at him, and shot at the van five or six times. When he realized the defendant had shot him, he pulled off.

Mr. Buggage thought the defendant was trying to kill him, but he did not know why. He explained that one of the bullets came through the mirror, went through his back, came out, and went through the seat. Mr. Buggage called the

police and met with them; then, they transported him to the hospital for treatment of the gunshot wound.

Mr. Buggage testified that he did not threaten the defendant and was not carrying a gun when the defendant shot him. He paid $2,300 to repair the damage to his van.

Mr. Buggage testified that after the defendant shot him, Ms. Lavigne called him several times in an attempt to convince him to drop the charges against the defendant. He also testified that Ms. Lavigne told him that the defendant was offered a thirty-year plea agreement and that he (Mr. Buggage) was "throwing the defendant's life away." Mr. Buggage explained that the defendant's father asked him, in a three-way call, if he would take $5,000 to drop the charges. This phone call was recorded and played for the jury. Mr. Buggage stated that he declined the offer, elaborating that if he dropped the charges, the defendant might try to kill him again and succeed in doing so. Mr. Buggage testified that Ms. Lavigne called again, stating that the defendant's mother and brother offered an additional $5,000; however, he refused again.

Detective Joann Gallagher of the Kenner Police Department testified that she took a statement from Mr. Buggage. Mr. Buggage described the suspect, whom he knew only as "Shyheem," as a black male from LaPlace with a cross tattoo on his forehead between his eyes, approximately six feet tall and twenty-six years old. Police compiled a photographic lineup, and Mr. Buggage positively identified[2] the defendant as the perpetrator. Law enforcement arrested the defendant at Ms. Lavigne's residence.

Detective Gallagher testified that she later listened to the defendant's phone calls from jail. In one call, the defendant and a man, whom she believed was the defendant's father, spoke about going to a notary so Mr. Buggage could sign an

---

[2] The administration of the lineup was audio recorded, and the audiotape was played for the jury.

affidavit stating that the defendant did not shoot him and that they would pay him money. Detective Gallagher subsequently listened to a phone call that Mr. Buggage recorded, which included Ms. Lavigne, Mr. Buggage, and the same gentleman, during which Mr. Buggage was asked again to drop the charges. She heard Mr. Buggage explain that he could not do that because if he did so and the defendant was released, the defendant might kill him. These calls were recorded and played for the jury.

In support of count three, possession of a firearm by a convicted felon, the State called Donna Quintanilla, who was accepted as an expert in latent print processing and comparison, to establish defendant's prior felony conviction. Ms. Quintanilla testified that she fingerprinted the defendant in court one day prior and identified State's Exhibit 15 as that fingerprint card. She compared the prints on this card with those in State's Exhibit 16, the fingerprint cards from the defendant's prior arrest and conviction for second-degree battery. She testified that both cards contained the same name (Shyheem Love), State ID number, and AFIS number. She pointed out that the social security numbers differed by one number but that the defendant had supplied the number at the time of his arrest.

Ms. Quintanilla testified that she compared the fingerprints in these exhibits and found sufficient features in agreement to find the prints on both cards were made by the same person, the defendant herein. She further testified that another JPSO examiner, Jazmin Charles, also analyzed the fingerprint cards and verified the results.

## ASSIGNMENT OF ERROR

Defendant's sole assignment of error addresses itself to his multiple bill hearing, which occurred post-conviction and sentence on January 29, 2024. In his assignment of error, the defendant argues that the trial court erred by allowing the State to present expert testimony at the multiple bill hearing from Jazmin Charles,

a witness who had not been certified in fingerprint analysis, whose evaluations needed to be reviewed by a certified analyst, and who indicated that this was her first time testifying in court. For these reasons, the defendant seeks to reverse the multiple bill adjudication and remand the case to the trial court.

The State responds that the trial court did not abuse its discretion in recognizing Ms. Charles as an expert in latent fingerprint analysis and allowing her to testify at the multiple bill hearing. It further responds that Ms. Charles provided the trial court with her curriculum vitae, establishing her training and education. The State asserts that Ms. Charles testified to her experience working as an AFIS technician and a latent print examiner for the Jefferson Parish Sheriff's Office (JPSO). It points out that Ms. Charles offered testimony and opinion at the hearing to assist the trier of fact on latent fingerprint analysis. The State maintains nothing suggests that the trial court's finding as to Ms. Charles' competency as an expert was an abuse of discretion, and there is no basis for reversing the defendant's adjudication as a third felony offender.

At the multiple bill hearing, the defense counsel stated that she had received a notice of intent from the State to call an expert witness, Ms. Charles, from the JPSO crime lab, including her two-page curriculum vitae. The defense counsel objected to Ms. Charles' testimony because of the late disclosure. The prosecutor apologized, explaining that he was busy with a murder trial and gave defense counsel the notice as soon as possible. The trial court overruled the defense counsel's objection.

Ms. Charles testified that she worked in the JPSO crime laboratory as a latent print examiner and had been in that position for two years. She explained that her duty as a latent print examiner was to compare unknown latent prints to known prints and process pieces of evidence either chemically or physically to develop latent prints. She testified that before becoming a latent print examiner,

she was an AFIS technician for seven months and that her duties were to conduct quality control of bookings involving fingerprints and palm prints from criminal agencies. Ms. Charles stated that she had a Bachelor of Science degree in biological sciences and completed a year and a half of external and internal training. For her "internal training," she shadowed her supervisor, Ms. Quintanilla, a qualified and certified latent print examiner, in comparison and processing cases.

Ms. Charles testified that she assisted Ms. Quintanilla by fingerprinting individuals and by viewing her testimony whenever Ms. Quintanilla was called to testify at a multiple bill hearing or in a felon in possession of a firearm case. She explained that whenever a latent print examiner analyzed fingerprints, the prints were verified using a methodology called "ACE-V." Ms. Charles maintained that after being authorized to conduct comparison cases, she verified Ms. Quintanilla's cases. Ms. Charles elaborated that becoming a certified latent print examiner was not a requirement of the JPSO crime lab but that it was considered a "level of excellency." She also testified that the certification entailed an eight-hour test that included the history of fingerprinting and different subjects about processing and comparison.

Ms. Charles averred that she was working toward that certification and that in the next year, she planned on submitting the documents needed to take the test. She provided the trial court with a copy of her curriculum vitae, and the court admitted it into evidence over the objection of the defense counsel. During cross-examination, Ms. Charles admitted that she had never testified as an expert in court.

Although defense counsel indicated after questioning that she would not stipulate to Ms. Charles' qualifications, the trial court accepted Ms. Charles as an expert in latent print processing and comparison over the defense's objection.

La. C.E. art. 702 provides that if scientific, technical, or other specialized knowledge assists the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify to that in the form of an opinion or otherwise.

In reviewing a trial court's decision in qualifying a witness as an expert, courts typically place the burden on the party offering the witness as an expert. *State v. Craig*, 95-2499 (La. 5/20/97), 699 So.2d 865, 870, *cert. denied*, 522 U.S. 935, 118 S.Ct. 343, 139 L.Ed.2d 266 (1997). The Louisiana Supreme Court has consistently held that the competency of an expert witness is a question of fact determined within the sound discretion of the trial judge. The trial court's rulings on the qualifications of expert witnesses will not be disturbed absent an abuse of discretion. *State v. Trahan*, 576 So.2d 1, 8 (La. 1990).

Generally, an expert's competency test is the expert's knowledge of the subject about which he is called upon to express an opinion. *State v. Ferguson*, 09-1422 (La. App. 4 Cir. 12/15/10), 54 So.3d 152, 166, *writ denied*, 11-135 (La. 6/3/11), 63 So.3d 1008. A combination of specialized training, work experience, and practical application of the expert's knowledge can establish that person as an expert. *Id.* Courts can also consider the previous qualification of a witness as an expert. *Craig*, *supra*.

The record indicates that the State presented sufficient evidence to support the trial court's acceptance of Ms. Charles' competency to be qualified as an expert based on her knowledge, skill, experience, training, and education in latent fingerprint examinations and analysis. Thus, the trial court did not abuse its discretion by qualifying Ms. Charles as an expert.

## ERROR PATENT REVIEW

We reviewed the record for errors patent, according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990).

The uniform commitment order (UCO) reflects that the adjudication date was November 2, 2023; however, the record shows that the adjudication date was October 3, 2023. In *State v. Tillery*, 14-429 (La. App. 5 Cir. 12/16/14), 167 So.3d 15, 22, *writ denied*, 15-106 (La. 11/6/15), 180 So.3d 306, this Court remanded the matter for correction of the adjudication date in the UCO. Likewise, we remand this case and order the trial court to correct the UCO to reflect the accurate adjudication date. On remand, we order the Clerk of Court for the 24th Judicial District Court to transmit the original of the corrected UCO to the appropriate authorities following La. C.Cr.P. art. 892(B)(2), and the Department of Corrections' legal department. *See State v. Doucet*, 17-200 (La. App. 5 Cir. 12/27/17), 237 So.3d 598, *writs denied*, 18-77 (La. 10/8/18), 253 So.3d 789 and 18-196 (La. 11/5/18), 255 So.3d 1052, *cert. denied*, - - U.S. - - , 139 S.Ct. 2676, 204 L.Ed.2d 1079 (2019).

## CONCLUSION

For the preceding reasons, we affirm the defendant's convictions, multiple offender adjudication, and sentences. We remand this matter with the instructions stated above.

**CONVICTIONS, MULTIPLE OFFENDER ADJUDICATION, AND SENTENCES AFFIRMED; MATTER REMANDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**OCTOBER 30, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

_Curtis B. Pursell_
**CURTIS B. PURSELL**
CLERK OF COURT

## 24-KA-73

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE MICHAEL P. MENTZ (DISTRICT JUDGE)
MATTHEW R. CLAUSS (APPELLEE)          MONIQUE D. NOLAN (APPELLEE)          THOMAS J. BUTLER (APPELLEE)

**MAILED**
PRENTICE L. WHITE (APPELLANT)          HONORABLE PAUL D. CONNICK, JR.
ATTORNEY AT LAW                        (APPELLEE)
LOUISIANA APPELLATE PROJECT            DISTRICT ATTORNEY
16731 CICERO AVENUE                    LEO M. AARON (APPELLEE)
BATON ROUGE, LA 70816                  DISTRICT ATTORNEY
                                       MOLLY LOVE (APPELLEE)
                                       ASSISTANT DISTRICT ATTORNEYS
                                       TWENTY-FOURTH JUDICIAL DISTRICT
                                       200 DERBIGNY STREET
                                       GRETNA, LA 70053